**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CLEBERSON OLIVEIRA GOMES<br><br>Petitioner,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HIS New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigration and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>Respondents. | Civil Action No. 1:25-cv-11571-JEK |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner Cleberson Oliveira Gomes' ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

**INTRODUCTION**

On May 29, 2025, the Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to its authority under 8 U.S.C. § 1225(b). The Petitioner now

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

petitions this Court for a Writ of Habeas Corpus, *see* 28 U.S.C. § 2241, seeking judicial review of

his detainment.  *See generally* Doc. 1.  The Petitioner claims that he cannot be detained pursuant

to 8 U.S.C. § 1225(b) because he is currently in removal proceedings under 8 U.S.C. § 1229a.  *Id.*

Despite what the Petitioner asserts in his Petition, the Petitioner's detention by ICE is fully

supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the

Constitution.  ICE is detaining the Petitioner pursuant to its statutory authority contained at 8

U.S.C. § 1225(b) because the Petitioner is an "applicant for admission" who has not shown his

admissibility into the United States clearly and beyond a doubt and must be detained during the

pendency of his removal proceedings.  ICE has also determined that the Petitioner is eligible for

expedited removal, given that he is an applicant for admission to the United States who is

inadmissible to the United States under 8 U.S.C. § 1182(a)(7) (lack of valid documentation for

admission) and has been present in the United States for less than two years.[2]  In either case—

regardless of whether the Petitioner remains in the formal removal proceedings which are currently

---

[2]  The INA authorizes expedited removal "[i]f an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(c) or 1182(a))(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i).

Expedited removal —a mechanism for swiftly removing certain aliens from the United States without a hearing before an immigration judge – was created by Congress in 1996.  Since then, the Attorney General or the Secretary of Homeland Security has had, in their "*sole and unreviewable* discretion," the authority to "designate" as subject to expedited removal certain classes of unlawfully present aliens who have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii) (emphasis added).  In keeping with the statute, on January 21, 2025, the then-Acting DHS Secretary designated as subject to expedited removal certain aliens encountered anywhere in the United States within two years of illegally crossing the border. *See Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139 (Jan. 24, 2025).

pending or whether the Petitioner is later processed for expedited removal—his detention is mandatory under 8 U.S.C. § 1225(b).

The Petitioner, a native and citizen of Brazil, states that when he entered the United States on May 12, 2024, he was released on recognizance and placed into removal proceedings in Immigration Court.  Doc. 1 ¶ 1.  The Petitioner thus admits that he has been in the United States for less than two years.  The Petitioner does not allege any ground upon which he has legal status to remain in the United States.[3]

Instead, the Petitioner claims that his Fifth Amendment right to due process has been violated because he is currently being "subjected to Expedited Removal in violation of his constitutional right to due process of law."  Doc. 1 ¶ 20.  The Petitioner further asserts that he "cannot be detained for, or subjected to, Expedited Removal because he is currently in removal proceedings in Immigration Court."  Doc. 1 ¶ 21.

However, the Petitioner's challenge to expedited removal is premature.  An expedited removal order has not yet issued.  Accordingly, the expedited removal process has not yet begun, and the Petitioner is not being "subjected to expedited removal" at this time.  Currently, the Petitioner is still in formal removal proceedings before the Immigration Court under 8 U.S.C. §1229a. Although ICE has made a motion to terminate those removal proceedings, the Immigration Court is receiving briefing on the issue, and the removal proceedings are still ongoing. Because the Petitioner is still before the Immigration Court, if he seeks to challenge his detention, he should pursue a bond hearing before the Immigration Court; and if denied, he should appeal to

---

[3] Petitioner asserts that, at some point in the future, he "intends on filing an Asylum application." Doc. 1 ¶ 1.

the Board of Immigration Appeals ("BIA").  This Court should not review his challenge to his detention until he has exhausted his administrative remedies.

Furthermore, even if the Court decided to decide the Petitioner's Due Process claim, that claim should be denied.   As an alien seeking admission to the United States, the Petitioner's due process rights are co-extensive with the procedural protections afforded by the statutes, which he has received.

## BACKGROUND

### A.    Legal Background for Aliens Seeking Admission to the United States.

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens."  6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).

Pursuant to 8 U.S.C. § 1225(a)(1), an alien present in the United States who has not been admitted is known as an applicant for admission.  Per Section 1225(a)(3), all applicants for admission are subject to inspection by immigration officers to determine if they are admissible to the United States.  The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures).   Section 1225(b)(1) provides for the inspection of applicants for admission.

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . .  to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with

a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report). After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing." 8 U.S.C. § 1225(b)(1)(A)(i). Per Section 1225(b)(1)(A)(iii)(II), the expedited removal process can apply to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [the] alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility".[4]

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."[5] 8 U.S.C. § 1225(b)(2)(A). In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025),

---

[4] If, however, the alien expresses a fear of persecution or torture, the expedited removal order is held in abeyance and an asylum officer must determine whether the alien has a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. 1225(b)(1)(B)(iii)(IV). The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings v. Rodriguez,* 583 U.S. 281, 302 (2018) ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)). This is because Section 1225(b)(1)(B)(iii)(IV) provides for mandatory detention of individuals who have not established a credible fear until removal from the United States ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added).

[5] Section 240 of the INA, codified at 8 U.S.C. § 1229a, refers to the full removal proceedings that the Petitioner is currently subject to, before the Immigration Court.

5

the BIA noted that "DHS may place aliens arriving in the United States in either expedited removal proceedings under section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1), or full removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a."   For both expedited removal proceedings and full removal proceedings, the BIA held that 8 U.S.C. § 1225(b)(2)(A) mandates detention "until removal proceedings have concluded." *Id.* at 68 (quoting *Jennings v. Rodriguez*, 538 U.S. 281, 299 (2018)).   The BIA stated, "we hold that an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)." *Id.* at 69.  The BIA recognized that "[t]he only exception permitting the release of aliens detained under section 235(b) of the INA, 8 U.S.C. § 1226(b), is the parole authority provided by 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A)." *Id.* at 69 (citing *Jennings*, 583 U.S. at 300).

## B.    The Petitioner's Immigration History

The Petitioner is a native and citizen of Brazil. *See* Declaration of Keith M. Chan, Assistant Field Officer Director, U.S. Department of Homeland Security ("Chan Decl."), filed herewith, at ¶ 7.  U.S. Customs and Border Control ("CBP") encountered the Petitioner at the southern border of the United States on May 12, 2024 in the area of Calexico, California.  Chan Decl. ¶ 8.  At the time, he was not in possession of a valid unexpired immigration visa, reentry permit, border crossing identification card, or other valid entry document.  Chan Decl. ¶ 8.  CPB detained the Petitioner without a warrant and issued a Notice to Appear under 8 U.S.C. § 1182(a)(6)(A)(i).  Chan Decl. ¶ 9.  The Petitioner was released on an Order of Recognizance.  Chan Decl. ¶ 9.  He was not admitted or paroled after inspection by an immigration officer.  Chan Decl. ¶ 9.

On May 13, 2024, the Notice to Appear was filed with the Chelmsford Immigration Court. Chan Decl. ¶ 10.  On May 29, 2025, an ICE attorney made an oral motion to terminate the Petitioner's immigration proceedings at his scheduled removal hearing in immigration court.  Chan Decl. ¶ 11.  The immigration judge granted the Petitioner with ten days to respond to the motion to terminate.  Chan Decl. ¶ 11.  The immigration judge rescheduled the removal proceedings until December 4, 2025.  Chan Decl. ¶ 11.

On May 29, 2025, ICE detained the Petitioner pursuant to its authority under 8 U.S.C. § 1225(b).  Chan Decl. ¶ 12.  ICE had a Warrant for Arrest of Alien, Form I-200.  Chan Decl. ¶ 12. That same day, ICE terminated the Petitioner's Order of Recognizance.  Chan Decl. ¶ 14.  The Petitioner is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts.  Chan Decl. ¶ 14.  His removal proceedings remain pending before the Immigration Court.  Chan Decl. ¶ 15.

## ARGUMENT

### A.    The Petitioner Is Properly Detained Under 8 U.S.C. § 1225(b)

The Petitioner argues he cannot be "detained for, or subjected to, Expedited Removal because he is currently in removal proceedings in Immigration Court."  Doc. 1 ¶ 21.  However, the Petitioner is not yet in expedited removal proceedings because no expedited removal order has issued.  The Petitioner is still in formal removal proceedings before the Immigration Court, and he is properly detained under 8 U.S.C. 1225(b)(2)(A), which mandates that he remain in detention during the pendency of his removal proceedings.

Pursuant to 8 U.S.C. § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not

clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240." 8 U.S.C. § 1225(b)(2)(A).

In the present case, the Petitioner falls squarely within the ambit of Section 1225(b)(2)(A)'s mandatory detention requirement. Based on the facts presented by both parties, the Petitioner is an alien who is an "applicant for admission" to the United States. The Petitioner is an alien "who has not been admitted" to the United States and not clearly and beyond a doubt entitled to be admitted, given that the Petitioner "has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Indeed, the Petitioner is inadmissible per 8 U.S.C. § 1182(a)(7) in that he lacks proper documents to demonstrate admission to the United States. Thus, the Petitioner is properly detained subject to 8 U.S.C. § 1225(b), which mandates that he remain detained "until removal proceedings are concluded." *Jennings*, 583 U.S. at 299.

To the extent that the Petitioner challenges his detention by claiming that his detention is not under 8 U.S.C. § 1225(b) (which mandates detention) but rather under 8 U.S.C. § 1226(a) (discretionary detention), such an argument fails. In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the BIA held that mandatory detention under 8 U.S.C. § 1225(b) applies to all "applicant[s] for admission," whether they are placed in expedited removal proceedings or in full removal proceedings under 8 U.S.C. § 1229a. *Id.* at 67-68.

In any event, if the Petitioner seeks to press a challenge to his detention on this or any other ground, the proper forum is the Immigration Court, where he should seek a bond hearing and then, if needed, he should appeal to the Board of Immigration Appeals; given that the Petitioner is still in ongoing formal removal hearings before the Immigration Court. Because the Petitioner has not

yet exhausted his administrative remedies, this Petition is premature, and this Court should decline

to review the challenge to his detention.  As the First Circuit has explained in the immigration

bond hearing context, "[g]enerally speaking, a plaintiff's failure to exhaust "her administrative

remedies precludes her from obtaining federal review of claims that would have properly been

raised before the agency in the first instance." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021).

While there is no statutory mandate to exhaust a claim for release that could be made to an

Immigration Judge prior to presenting such claim to the district court, common-law exhaustion

"allows an agency the first opportunity to apply its expertise and obviates the need for judicial

review in cases in which the agency provides appropriate redress." *Id.* at 256 (cleaned up) (quoting

*Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175–76 (1st Cir. 2016)).  Here, the

Petitioner can seek release from detention though a bond hearing and he can appeal a bond decision

to the BIA if necessary.  Because Petitioner failed to exhaust administrative remedies, the Court

should decline to exercise habeas jurisdiction.

**B.      The Petitioner's Due Process Claim Is Meritless.**

The Petitioner claims that his current detention is "without cause" and "in violation of his

constitutional rights to due process of law."  Doc. 1 ¶ 19.  This argument fails.   The cause of his

detention is that the Petitioner is subject to mandatory detention until his removal proceedings

have concluded under 8 U.S.C. § 1225(b)(2)(A), as set forth above.

The Petitioner appears to argue that because his removal proceedings before the

Immigration Court are ongoing, he expected to remain released on his own recognizance.

However, an "expectation of receiving process is not, without more, a liberty interest protected by

the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12 (1983).  And the Supreme

Court has held that applicants for admission such as Petitioner are only entitled to the protections

set forth by statute and that "the Due Process Clause provides nothing more." *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004). Accordingly, "certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographical borders." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

The Supreme Court has explained that applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and "it is not within the province of any court, unless expressly authorized by law, to review [that] determination". *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40.

As explained by the Supreme Court, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have

entered the country …". *Thuraissigiam*, 591 U.S. at 139.  Stated further, "aliens who arrive at ports

of entry—even those paroled elsewhere in the country for years pending removal—are 'treated'

for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215).  The

Court held that this same "threshold" rule applies to individuals, like Petitioner, who are

apprehended after trying "to enter the country illegally" since by statute, such individuals are also

defined as applicants for admission. *Id.* at 139-40.  Treating such an individual in a more favorable

manner than an individual arriving at a port of entry would "create a perverse incentive to enter at

an unlawful rather than a lawful location" and therefore the Supreme Court rejected the argument

that an individual who "succeeded in making it 25 years into U.S. territory before he was caught"

should be entitled to additional constitutional protections. *Id.* at 140.

Instead, applying the "century-old rule regarding the due process rights of an alien seeking

initial entry[,]" the Court explained that aliens arrested after crossing the border illegally, such as

Petitioner, have "only those rights regarding admission that Congress has provided by statute." *Id.*

at 140.  The Court was clear: "the Due Process Clause provides nothing more" than the procedural

protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal

if he fears return to his home country and also seek parole from the agency. *Id.*   The   Supreme

Court's decision in *Thuraissigiam* is instructive.  In relevant part, *Thuraissigiam* concerned a due

process challenge raised by an alien apprehended 25 yards from the border, which he crossed

illegally.  591 U.S. at 139.   DHS detained and processed him for expedited removal because he

lacked valid entry documents. *Id.* at 114.   An asylum officer then determined that Mr.

Thuraissigiam lacked a credible fear of persecution. *Id*.  Mr. Thuraissigiam petitioned for a writ

of habeas corpus, asserting a fear of persecution and requesting another opportunity to apply for

asylum. *Id.*

In its decision, the Supreme Court delineated the boundaries of due process claims that can be made by applicants for admission. Specifically, the Court held that for such aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 131 (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *see also Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that Thuraissigiam's due process rights were not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides.").

The U.S. Court of Appeals for the First Circuit also held that detention of an alien seeking admission to the United States does not violate due process in *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the Court explained that "the detention of the appellants is entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

This Court should apply the "century-old rule" reaffirmed in *Thuraissigiam* and conclude that Petitioner's due process rights are coextensive with the rights provided him under statute. Here, the law provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section

240." 8 U.S.C. § 1225(b)(2)(A). For the reasons set forth above, the Petitioner is subject to mandatory detention under this statute.

Moreover, mandatory detention is warranted under 8 U.S.C. § 1229a whether the Petitioner remains in ongoing removal proceedings or is later processed for expedited removal. *See Matter of Q. Li*, 29 I&N Dec. 66, 67 ("'in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 240.'" (emphasis added) (quoting 8 U.S.C. § 1235(b)(2)(A)). ICE's decision to place an alien arriving in the United States in either expedited removal proceedings under 8 U.S.C. § 1225(b)(1), or full removal proceedings 8 U.S.C. § 1229a, is discretionary. However, ICE's decision to detain or release aliens deemed applicants for admission is not. "For those placed in expedited removal proceedings who are referred to an Immigration Judge for consideration of their asylum application. . . 8 U.S.C. § 1225(b)(1)(B)(ii), requires detention until the final adjudication of the asylum application." *Q. Li*, 29 I&N Dec. at 68 (citing *Matter of M-S-*, 27 I&N Dec. 509, 516 (A.G. 2019)). "Likewise, for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section . . . 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'" *Q. Li*, 29 I&N Dec. at 68 (quoting *Jennings*, 583 U.S. at 299). Thus, even if the Court was not barred from reviewing Petitioner's claim under 8 U.S.C. § 1252(a)(2)(A), his claim that his current detention is "without cause" and "in violation of his constitutional rights to due process of law" is without merit and should be dismissed.

Finally, to the extent that the Petitioner challenges his present detention as a due process violation on the ground that CBP previously released him on an Order of Recognizance, this

argument fails. Under 8 U.S.C. § 1226(b), the Attorney General "*at any time* may revoke a bond

or parole "and rearrest and detain the alien  8 U.S.C. § 1226(b) (emphasis added).  In other words,

by statute, the government can revoke bond or parole for an alien, at any time, for any reason or

no reason at all.  Here, ICE's decision to rearrest and detain the Petitioner under 8 U.S.C. §

1225(b)(2)(A), a statute which mandates his detention until removal, falls squarely within its

authority under 8 U.S.C. § 1226(b).  Thus, Petitioner cannot claim a due process violation arising

from the fact that he is detained despite having earlier been released on his own recognizance.

That earlier release order could have been revoked for any (or no) reason at all, and here it was

revoked because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

For all these reasons, Petitioner's due process claim should be denied.

## CONCLUSION

For the reason described above, the Petitioner's Petition should be dismissed.

Respectfully submitted:

LEAH B. FOLEY
United States Attorney

Dated: June 6, 2025                      By:      */s/ Nicole M. O'Connor*
                                                  NICOLE M. O'CONNOR
                                                  Assistant United States Attorney
                                                  United States Attorney's Office
                                                  1 Courthouse Way, Suite 9200
                                                  Boston, MA 02210
                                                  Tel.: 617-748-3112
                                                  Email: nicole.o'connor@usdoj.gov

14

## <u>CERTIFICATE OF SERVICE</u>

       I, Nicole M. O'Connor, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  June 6, 2025         By:        */s/ Nicole M. O'Connor*
                                    Nicole M. O'Connor
                                    Assistant United States Attorney