UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEBERSON OLIVEIRA GOMES )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>PATRICIA HYDE, Field Office Director, )<br>MICHAEL KROL, HSI New England Special )<br>Agent in Charge, and TODD LYONS, Acting )<br>Director U.S. Immigrations and Customs )<br>Enforcement, and KRISTI NOEM, U.S. Secretary )<br>of Homeland Security, )<br>)<br>Respondents. )<br>) | Civil Action No. 1:25-cv-11571-JE |

### REPLY TO GOVERNMENT OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner Cleberson Oliveira Gomes, by and through their attorney, Shantanu Chatterjee, respectfully submits this Reply to Respondents' Opposition to Petitioner's Petition for Writ of Habeas Corpus ("Petition"). Doc. 7. Petitioner submits this Reply pursuant to Rule 5(e) of the Federal Rules Governing Section 2254 cases.

When Petitioner entered the United States, the Department of Homeland Security ("DHS") chose to put Petitioner in full removal proceedings before an Immigration Judge under 8 U.S.C. § 1229a, which is mutually exclusive with expedited removal proceedings under 8 U.S.C. § 1225. DHS is now detaining Petitioner solely on the purported ground that Petitioner is not eligible for bond under 8 U.S.C. § 1225. However, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and § 1225(b)(2)(A) do not apply to Petitioner. Therefore, Petitioner's detention violates both the

1

Immigration and Nationality Act ("INA") and Petitioner's Fifth Amendment right to due process of law.

## PROCEDURAL HISTORY

Petitioner entered the United States on May 12, 2024, through the southern border. *See* Doc. 1 ¶ 1. On May 13, 2024, DHS elected to allow Petitioner to enter the United States and filed a "Notice to Appear" ("NTA") against Petitioner, with the Chelmsford Immigration Court, pursuant to 8 U.S.C. § 1229. *See* Notice to Appear against Petitioner. The NTA charged Petitioner with being "inadmissible" as "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, 8 U.S.C. § 1182(a)(6)(A)(i)." *See* Notice to Appear against Petitioner.

An NTA is the "charging document" that initiates removal proceedings in Immigration Court, before an Immigration Judge, against a noncitizen, and constitutes written notice to the noncitizen of their placement in removal proceedings before the Immigration Court. *See* 8 U.S.C. § 1229(a) (describing the requirements of a Notice to Appear as the "initiation of removal proceedings."); 8 C.F.R. § 1003.14(a) (2025) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."). Therefore, DHS's filing of the NTA against Petitioner in this case initiated "full" removal proceedings in Immigration Court pursuant to 8 U.S.C. § 1229a—which vested jurisdiction with the Immigration Judge—and constituted "**the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States**." 8 U.S.C. § 1229a(a)(3) (emphasis added). As the Board of Immigration Appeals ("BIA") recently stated, "DHS may place aliens arriving in the United States in either expedited removal proceedings under section 235(b)(1) of the INA, 8

2

U.S.C. § 1225(b)(1), **or** full removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a." *Matter of Q. LI*, 29 I&N Dec. 66, 68 (BIA 2025) (emphasis added). In addition, the Customs and Border Protection issued the Petitioner a Form I-286 on May 13, 2024, a document which released him on his own recognizance "pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations." *See* I-213 Narrative. Full removal proceedings and expedited removal proceedings are mutually exclusive. Moreover, the Government concedes that Petitioner is not in expedited removal proceedings. *See* Doc. 7 at p. 3 ("[T]he expedited removal process has not yet begun.").

On May 29, 2025, Petitioner appeared at his hearing with the Chelmsford Immigration Court before Immigration Judge Nina Froes. *See* Chelmsford Immigration Court Scheduling Order. At the hearing, the attorney for DHS orally moved to dismiss the § 1229a removal proceedings against Petitioner. *See id*. The Immigration Judge has not yet ruled on DHS's motion, but rather issued a "Scheduling Order" requiring Petitioner to file a response. *See id*. On June 9, 2025, Petitioner filed an Opposition to DHS's Motion to Dismiss. *See* Petitioner's Opposition to DHS Motion to Dismiss. The court also continued his master calendar hearing to December 4, 2025.

After Petitioner's May 29 Immigration Court hearing, DHS arrested Petitioner as he was leaving the Chelmsford Immigration Court, pursuant to 8 U.S.C. § 1226. *See* Warrant for Arrest of Alien; Notice of Custody Determination. Petitioner subsequently filed with the Chelmsford Immigration Court a request for custody redetermination—also known as a "bond request"—pursuant to 8 C.F.R. § 1003.19(a) (2025) ("Custody and bond determinations made by [DHS]…may be reviewed by an Immigration Judge."). In response to Petitioner's bond request, DHS filed a notice of the Petitioner's ineligibility for bond with the Immigration Court. *See* DHS

3

Notice of Petitioner's Ineligibility for Bond. In that document, DHS argues that Petitioner is "detained without a warrant while arriving in the United States…subsequently placed in removal proceedings is detained under 8 U.S.C. § 1225(b)…and is ineligible for any subsequent release on bond under [8 U.S.C. § 1226(a)]." *See also* Doc. 8   6 ("The Petitioner is detained pursuant to 8 U.S.C. § 1225(b)."). This assertion contradicts DHS's May 29, 2025 Warrant for Arrest of Alien, which explicitly authorized Petitioner's arrest "pursuant to sections 236 and 287 of the Immigration and Nationality Act," or 8 U.S.C. § 1226 and 8 U.S.C. § 1357.

## ARGUMENT

1. **Petitioner is Not Subject to Mandatory Detention Under the Expedited Removal Statute**

The Government now argues that Petitioner is subject to mandatory detention under the expedited removal statute, 8 U.S.C. § 1225(b). *See* Doc. 7 at p. 7. This argument is inapposite because this statutory provision applies only to noncitizens in the process of Credible Fear Interviews: a process to which Petitioner was not and is not subject.

The statute upon which the Government relies to justify Petitioner's detention applies exclusively to noncitizens formerly in expedited removal proceedings and the "Credible Fear Interview" procedure. 8 U.S.C. § 1225 contains a provision governing "Asylum interviews," or "Credible Fear Interviews." *See* § 1225(b)(1)(B). When a noncitizen that seeks admission to the United States and is in the custody of DHS "indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution," 8 U.S.C. § 1225(b)(1)(A)(ii), "the [immigration] officer shall refer the alien for an interview by an asylum officer." *Id*. This statute further provides that "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution…the alien shall be detained for further consideration of the application for asylum." *Id*. § 1225(b)(1)(B)(ii). The statute clarifies that a noncitizen subject to

4

the Credible Fear Interview process is subject to mandatory detention: "Any alien **subject to the procedures under this clause** shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV) (emphasis added). Therefore, this provision explicitly limits the application of the mandatory detention provision to noncitizens "subject to the procedures" under the "Asylum interviews" clause.

The mandatory detention provision of 8 U.S.C. § 1225(b) does not apply to Petitioner. Petitioner was never placed in expedited removal proceedings and never underwent a Credible Fear Interview. When DHS apprehended Petitioner at the United States border, DHS chose to initiate full removal proceedings under 8 U.S.C. § 1229a. *See* Notice to Appear against Petitioner. DHS did **not** subject Petitioner to a Credible Fear Interview under 8 U.S.C. § 1225(b)(1)(B)(ii), which is indicated by the fact that the box on Petitioner's NTA stating "This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture," **remains unchecked**. *See id*; Notice to Appear against Petitioner. Full removal proceedings are mutually exclusive with expedited removal proceedings. *See* 8 U.S.C. § 1229a(a)(3)("a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."). Therefore, Petitioner is **not** subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), which is limited to "alien[s] subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

5

Administrative interpretations of 8 U.S.C. § 1225 confirm that the mandatory detention provision applies only to noncitizens in the expedited removal and Credible Fear Interview procedure. The Attorney General explained that

> **Section 235 of the Act expressly provides for the detention of aliens originally placed in expedited removal**. Such aliens "shall be detained pending a final determination of credible fear." INA § 235(b)(1)(B)(iii)(IV) [8 USC § 1225(b)(1)(B)(iii)(IV)]. Aliens found not to have a credible fear "shall be detained…until removed." *Id*. Aliens found to have such a fear, however, "shall be detained for further consideration of the application for asylum." *Id*. § 235(b)(1)(B)(ii).

*Matter of M-S-*, 27 I&N Dec. 509, 512 (A.G. 2019) (emphasis added). This agency interpretation of 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) confirms that the application of this mandatory detention provision applies only to noncitizens in expedited removal proceedings "pending a final determination of credible fear." *Id*. In this case, there is no pending Credible Fear Interview for Petitioner. *See* Notice to Appear against Petitioner. The BIA recently affirmed *Matter of M-S-*, stating that "[f]or those placed in expedited removal proceedings who are referred to an Immigration Judge for consideration of their asylum application, section 235(b)(l)(B)(ii) of the INA, 8 U.S.C. § 1225(b)(1)(B)(ii), requires detention until the final adjudication of the asylum application." *Matter of Q. LI*, 29 I&N Dec. 66, 68 (BIA 2025).

The DHS documents pertaining to Petitioner's May 29, 2025 arrest demonstrate that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225. Both the Warrant for Arrest of Alien and Notice of Custody Determination indicate that DHS arrested Petitioner pursuant to INA § 236, 8 U.S.C. § 1226. *See* Warrant for Arrest of Alien against Petitioner; Notice of Custody Determination against Petitioner. As the Attorney General stated in *Matter of M-S-*,

> Section 236 of the Act addresses, more generally, the detention of aliens in removal proceedings. Once an alien has been arrested pursuant to an immigration warrant, DHS "may continue to detain the arrested alien" or

6

> "may release the alien on" "bond of at least $1,500" or "conditional parole." INA § 236(a)(1)–(2), 8 U.S.C. § 1226(a)(1)–(2).

*Matter of M-S-*, 27 I&N Dec. 509, 512 (A.G. 2019). Therefore, DHS's own arrest documents for Petitioner contradict the Government's contention that "[t]o the extent that the Petitioner challenges his detention by claiming that his detention is not under 8 U.S.C. § 1225(b) (which mandates detention) but rather under 8 U.S.C. § 1226(a) (discretionary detention), such an argument fails." Doc. 7 at p. 8. The arrest documents also contradict DHS's Opposition to Petitioner's request for bond with the Chelmsford Immigration Court that states that Petitioner "is not **eligible** for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025)." *See* DHS Notice of Petitioner's Ineligibility for Bond (emphasis added). Taking DHS's arrest documents against Petitioner into consideration, it is clear that DHS arrested Petitioner pursuant to 8 U.S.C. § 1226(a), **not** 8 U.S.C. § 1225(b), and Petitioner is not subject to mandatory detention.

The Government also relies on 8 U.S.C. § 1225(b)(2)(A) for the conclusion that Petitioner is not eligible for release. This argument also fails because this statutory provision applies to applicants for admission *before* DHS initiates full removal proceedings by filing an NTA with the Immigration Court. 8 U.S.C. § 1225(b)(2)(A) falls under the subheading "Inspection of other aliens," and states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [full removal] proceeding under section 1229a of this title." *Id*. (emphasis added). The INA defines the "terms 'admission' and 'admitted' [to] mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Both the plain meaning and the context of this provision—the expedited removal statute—indicate that it applies only at the time DHS initiates full removal

7

proceedings under 8 U.S.C. § 1229a. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("[T]he court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context."). In this case, DHS arrested Petitioner on May 29, 2025: over a year *after* DHS initiated full removal proceedings against Petitioner on May 13, 2024. *See* Notice to Appear against Petitioner; Notice of Custody Determination against Petitioner. Therefore, 8 U.S.C. § 1225(b)(2)(A) does not apply to this case because Petitioner was placed in full removal proceedings *before* DHS took him into custody. *See id*.

**To the extent that *Matter of Q. Li* permits mandatory detention of Petitioner under 8 U.S.C. § 1225(b), the Court should not follow *Matter of Q. Li*.** The Government contends that Petitioner is not eligible for release under the BIA's decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). The Government asserts that "In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the BIA held that mandatory detention under 8 U.S.C. § 1225(b) applies to all 'applicant[s] for admission,' whether they are placed in expedited removal proceedings or in full removal proceedings under 8 U.S.C. § 1229a." Doc. 7 at 8. The statute at issue in *Q. Li* is 8 U.S.C. § 1225(b)(2)(A), which governs "**Inspection** of other aliens." *Id*. § 1225(b)(2) (emphasis added). The statute provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). This statute applies at the time the noncitizen seeks admission, *before* DHS commences full removal proceedings. *See Matter of M-S-*, 27 I&N Dec. 509, 512 (A.G. 2019). If *Q. Li* stands for the proposition that 8 U.S.C. § 1225(b)(2)(A) renders Petitioner ineligible for bond, then the Court should eschew *Q. Li*'s arbitrary and

8

capricious interpretation of the statute. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 (2024) (stating that 5 U.S.C. §706(2)(A) requires "agency action to be set aside if 'arbitrary, capricious, [or] an abuse of discretion.'"). Courts may "hold unlawful and set aside agency action, findings, and conclusions found to be…not in accordance with law." *Id*. at 391 (quoting §706(2)(A)). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Id*. at 412. Therefore, if the Court determines that *Q. Li* extends 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention requirement to Petitioner, the Court should *not* follow *Q. Li*, but rather independently rule that 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner because the statute contemplates procedures—expedited removal and admission *before* full removal proceedings commenced—that do not apply to Petitioner.

### 2. Petitioner is Not Required to Exhaust Administrative Remedies

The Government contends that "the proper forum is the Immigration Court, where [Petitioner] should seek a bond hearing and then, if needed, he should appeal to the Board of Immigration Appeals; given that the Petitioner is still in ongoing formal removal hearings before the Immigration Court." Doc. 7 at 8. The Government relies on *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). This argument fails for three reasons.

First, Petitioner *did* file a bond request with the Chelmsford Immigration Court, but on June 12, 2025, Immigration Judge Donald Ostrom denied Petitioner's request, finding Petitioner ineligible for bond under 8 U.S.C. § 1225. *See* Immigration Judge Order Denying Bond (stating "Per *Matter of Q. Li*, Respondent not eligible for bond."). Based on information and belief, the BIA will likely affirm the Immigration Judge's decision pursuant to *Matter of Q. LI*, 29 I&N Dec. 66 (BIA 2025). The unlikelihood that Petitioner's claim of eligibility for release will

9

succeed at the administrative level supports Petitioner's instant habeas claim. *See, e.g.*, *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) ("[A]n administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief'") (quoting *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973))).

Second, *Brito* is distinguishable from the facts and arguments here. Petitioner is not challenging an Immigration Judge's decisions regarding the setting of bond. Rather, Petitioner challenges DHS's custody determination that Petitioner is ineligible for bond and DHS's detention of Petitioner pursuant to 8 U.S.C. § 1225(b).

Third, Petitioner is challenging his statutory *eligibility* to be released from detention, which is reviewable on habeas. *See, e.g.*, *Goncalves v. Reno*, 144 F.3d 110, 125 (1st Cir. 1998) ("Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant relief."). Furthermore, Petitioner *did* request bond with the Immigration Court, and DHS has contended that Petitioner is not eligible for bond. *See* DHS Notice of Petitioner's Ineligibility for Bond.

### 3. Petitioner Has a Right to Due Process in his Immigration Proceedings

Petitioner has a constitutionally protected interest in procedural due process in their removal proceedings and applications for relief. *See Yamataya v. Fisher*, 189 U.S. 86 (1903) (holding that immigrants have procedural due process rights); *Bridges v. Wixon*, 326 U.S. 135 (1945) (holding that deportation proceedings against non-citizens lawfully residing in the United States must adhere to norms of due process).

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission…and those who are within the United States after an

10

entry." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). "Noncitizens in this country…undeniably have due process rights." *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 191 (2020). *See also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application…."). The government is arguing that the Petitioner is seeking admission, but this belies the undisputed facts of this case. In this case, the Petitioner is not an arriving alien, was neither paroled nor had his parole revoked. In contrast, he was processed pursuant to INA 236(a), or 8 U.S.C. § 1226, and was placed in full removal proceedings, which are governed by 8 C.F.R. §§ 1003.12-1003.41, 1240.1-1240.26.

"[A]n alien in civil removal proceedings is not entitled to the same bundle of constitutional rights afforded defendants in criminal proceedings…various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) (quoting *Valencia v. Mukasey*, 548 F.3d 1261, 1263 (9th Cir. 2008)), cert. denied sub nom. *Hussain v. Garland*, 142 S. Ct. 1121 (2022). A full and fair hearing is one of the due process rights afforded to aliens in deportation proceedings.

The First Circuit held in *Hernandez-Lara v. Lyons* that the Fifth Amendment's Due Process clause requires the government to provide detained noncitizens awaiting removal proceedings a bond hearing. 10 F.4th 19 (1st Cir. 2021). The government must prove the noncitizen is a danger by clear and convincing evidence, or flight risk by preponderance of evidence. *See id*. at 41.  If the government cannot meet its burden, it must offer bond or conditional parole. See *id*. The decision expanded the due process rights of noncitizens. The court also asserted that the decision ameliorates the "substantial societal costs" of unnecessary detention.

**11**

In this case, the Government claims that the Petitioner has no right to due process because he is an applicant for admission. This argument ignores the facts of the case: that upon entry into the United States, DHS opted not to place Petitioner in expedited removal, but full removal proceedings. DHS then released Petitioner on his own recognizance pursuant to 8 U.S.C. § 1226(a). DHS served him with an NTA and placed him in full removal proceedings pursuant to 8 U.S.C. § 1229a. Now, DHS is trying to recreate the facts to change the posture of his case by claiming that Petitioner is subject to expedited removal, mandatory detention under the expedited removal statute, and has no right to due process. The Government's arguments attempt to stretch *Matter of Q Li*, 20 I&N Dec. 66 (BIA 2025), which involved a Respondent **who was conditionally paroled at the border**, to justify Petitioner's detention. However, the facts of the Petitioner's case are distinguishable from *Q. Li*, and the record shows that Petitioner remains in full removal proceedings with his next Master Calendar at the Chelmsford Immigration Court now scheduled for June 26, 2025. Petitioner remains in full removal proceedings. Thus, the protections afforded to *Hernandez Lara* should be extended to the Petitioner in this case as well.

## CONCLUSION

For the reason described above, Petitioner's Petition should be granted, and Respondents should be ordered to release Petitioner immediately pursuant to his statutory eligibility for release.

Dated: June 13, 2025

Respectfully submitted,

*Shantanu Chatterjee*
Shantanu Chatterjee, Esq.
BBO No. 698677
Georges Cote LLP
235 Marginal Street
Chelsea, MA 02150
(617) 884-1000 (tel.)
shaan@georgescotelaw.com

12

## **CERTIFICATE OF SERVICE**

I, Shantanu Chatterjee, Counsel for Petitioner hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: June 13, 2025                    Respectfully submitted,

*Shantanu Chatterjee*
_____
Shantanu Chatterjee, Esq.
BBO No. 698677
Georges Cote LLP
235 Marginal Street
Chelsea, MA 02150
(617) 884-1000 (tel.)
shaan@georgescotelaw.com

*Counsel for Petitioner*