Melanie M. Chaput
Chaput Law Office
46 Bridge Street, Unit G
Nashua, NH 03060                                          NON-DETAINED
EOIR ID# IO998616

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
CHELMSFORD, MASSACHUSETTS

| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| Cleberson OLIVEIRA GOMES ) | IN REMOVAL |
| A# 226-040-357, ) | PROCEEDINGS |
| ) | |
| Respondent ) | |
| ) | |

Immigration Judge: The Honorable Nina Froes
Next Hearing: December 4, 2025 at 1:30pm

**RESPONDENT'S OPPOSITION TO DHS'S MOTION TO DISMISS**

On May 29, 2025 counsel for the Department of Homeland Security (DHS) Office of the Principal Legal Advisor (OPLA) filed a motion to dismiss these proceedings. DHS alleges they wish "to place the respondent in expedited removal proceedings. The Department argues that the circumstances have changed since the issuance of the Notice to Appear." See Order of the IJ in EROP, dated May 29, 2025. OPLA did not seek Respondent's position before filing the motion to dismiss, and Respondent strenuously opposes the motion.[1]

For the reasons set forth below, the Court should deny DHS's motion to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

DHS issued a Notice to Appear (NTA) to initiate these removal proceedings against Respondent on May 13, 2024, alleging that Respondent, is a native and citizen of Brazil, is not a U.S. citizen or national, that he entered the United States near Calexico, California, on or about May 12, 2024, without being admitted or paroled after inspection by an immigration officer. As a result, he is charged as removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act for being present in the United States without admission or parole. DHS filed the NTA on May 13, 2024, commencing these removal proceedings. Respondent's hearing was continued so that he could find an attorney and his most recent hearing in this matter was scheduled for May 29, 2025.

At this hearing he expressed that he wanted more time to find an attorney to assist him with filing an asylum application and that he feared return to Brazil. The court noted that he had not filed his asylum application. As of that date, he had only missed his asylum deadline by 16

---

[1] The Immigration Court Practice Manual (ICPM) states that a party "should make a good faith effort to ascertain the opposing party's position on the motion." EOIR Policy Manual, Pt. II – ICPM, Ch. 5.2(i), https://www.justice.gov/eoir/reference-materials/ic/chapter-5/2. The Court should reject DHS's motion for their failure to comply with the ICPM by not making a good faith effort to contact Respondent prior to his hearing and appears to have intentionally targeted Respondents at the master calendar hearing that did not have counsel present.

days. The Immigration Judge gave him an application for asylum and explained that the needed to file as soon as possible and that she would reschedule his master calendar hearing for Decmeber 4, 2025. It was only at that time that the OPLA attorney raised the oral motion to dismiss the Respondent's case and the Respondent's current pro bono attorney intervened. She noted that ICE officers were outside the courtroom and were about to arrest the Respondent. The OPLA attorney maintained that he had no knowledge of an ICE operation and did not have "jurisdiction" to speak to them about their intentions to arrest the Respondent. The IJ put the parties on the record and allowed us 10 days to respond to the oral motion to dismiss. Over the Respondent's Counsel's objection, she did not order OPLA to put their motion in writing or to further clarify the reasons for their motion.

The Respondent was arrested by ICE immediately upon leaving the building. He spent three (3) days in custody at the Burlington ICE office in abhorrent conditions and was transferred to the Plymouth House of Corrections in Plymouth, MA. The Respondent has filed a habeas petition with the US District Court of Massachusetts which is pending due to the unlawfulness of his arrest. Respondent has attended all of his previous court hearings, has no criminal record and ICE has provided no justification for his arrest or reason that he should be placed in expedited removal. Now that the Respondent is detained, if the court grants their Motion he could be subject to mandatory detention (detention without bond), immediate return to his home country, and/or disappeared to a foreign country where will not be able to find him as has happened in several high-profile cases.

## II. ARGUMENT

This Court should deny DHS's motion to dismiss. In adjudicating DHS's motion, this Court must consider Respondent's arguments in opposition to the motion. Matter of G-N-C-, 22 I&N Dec. 281, 284-85 (BIA 1998). This Court should deny DHS's motion to dismiss because 2

Respondent wishes to have this Court adjudicate his application for asylum, withholding of removal and withholding based on the Torture Convention, and, since DHS has chosen to commence INA § 240 proceedings, he has a right to be heard on those claims. Further, Respondent will suffer serious prejudice if this Court grants DHS's motion to dismiss and he is not able to pursue his application for asylum, withholding of removal and withholding based on the Torture Convention before this Court.

Even evaluating DHS's motion solely on its stated basis pursuant to 8 C.F.R. § 239.2(a)(7), the motion must be denied because DHS has failed to establish that circumstances in this case have changed since the NTA's issuance, or that it is not in the government's best interest for the case to proceed to a final merits adjudication. In fact, DHS cannot lawfully apply expedited removal to the Respondent, as doing so would violate bedrock anti-retroactivity law. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).

### A. This Court Has a Duty to Consider the Respondent's Arguments in Opposition to DHS's Motion to Dismiss.

This Court has the exclusive authority to decide whether or not to dismiss these removal proceedings, and it must consider the Respondent's reasons for opposing DHS's motion. See 8 C.F.R. § 1239.2(c); Matter of G-N-C-, 22 I&N Dec. 281, 284-85 (BIA 1998). Board of Immigration Appeals (BIA) precedent recognizes that, in adjudicating a DHS motion to dismiss, an Immigration Judge must consider both parties' arguments. G-N-C-, 22 I&N Dec. at 284-85 ("To the extent that these proceedings were terminated without considering arguments from both sides, the Immigration Judge erred."). In a 2023 case, the BIA reaffirmed its longstanding precedent that when DHS moves to dismiss removal proceedings, the Immigration Judge "must . . . independently adjudicate the motion." Matter of H.N. Ferreira, 28 I&N Dec. 765, 768 (BIA 2023). In adjudicating DHS's motion, the Court must consider all "underlying facts and

circumstances," including "[t]he respondent's interest." Id. at 769. Recent EOIR guidance has affirmed the Immigration Judge's role as an independent and impartial adjudicator. See 3 Memorandum from Sirce E. Owen, EOIR Acting Dir., PM 25-02, EOIR's Core Policy Values, at 1 (Jan. 27, 2025). In interpreting Immigration Judge and BIA regulatory authority to control removal proceedings and adjudicate other types of motions that bear on a case's finality, the BIA has repeatedly confirmed that DHS does not have "absolute veto power over the authority of an Immigration Judge or the Board to act in proceedings." Matter of Avetisyan, 25 I&N Dec. 688, 693 (BIA 2012); accord Matter of W-Y-U-, 27 I&N Dec. 17, 20 n.5 (BIA 2017); see also Gonzalez-Caraveo v. Sessions, 882 F.3d 885, 890 (9th Cir. 2018) ("In the context of . . . motions to reopen and requests for continuances—the BIA and the Ninth Circuit, as well as other circuits, have rejected allowing such veto power to a party.").

Instead, Immigration Judges are required to "exercise [their] independent judgment and discretion and may take any action consistent with the Act and regulations that is appropriate and necessary for the disposition of such cases." Avetisyan, 25 I&N Dec. at 691 (citing 8 C.F.R. § 1003.10(b)). In sum, this Court must consider the Respondent's arguments against dismissal.

### B. This Court Should Deny DHS's Motion to Dismiss Because Dismissal for Expedited Removal Would Severely Prejudice the Respondent.

Dismissal of these proceedings so that DHS can subject the Respondent to expedited removal would result in his swift return to Brazil, where he would face harm and mandatory detention without the possiblity to pursue his immigration case. Dismissal of these proceedings would also deprive the Respondent of his right to have his meritorious claim for asylum, withholding of removal and withholding based on the Torture Convention adjudicated, as described below. BIA case law evaluating unilateral DHS dismissal motions has upheld dismissal where the respondent was not prejudiced. See, e.g., Matter of Andrade Jaso & Carbajal

Ayala, 27 I&N Dec. 557, 559 (BIA 4 2019) (upholding Immigration Judge grant of DHS motion to dismiss noting that dismissal was without prejudice, as "[t]he respondents have not been ordered removed, . . . there is no indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings); G-N-C-, 22 I&N Dec. at 286 (upholding DHS's motion to dismiss where the respondent did not specify relief he was eligible for or "explain how he was prejudiced" by the Immigration Judge's decision to dismiss). In contrast, here, the dismissal would severely prejudice the Respondent, and thus the Court must deny DHS's motion.

**1. Respondent Has a Right to Pursue Asylum, Withholding of Removal and Withholding Based on the Torture Convention, and This Court Has a Responsibility to Adjudicate Respondent's Application.**

This Court should deny DHS's motion to dismiss because the Respondent has a right to have his asylum, withholding of removal and withholding based on the Torture Convention claim adjudicated on the merits. Noncitizens in removal proceedings have a right to apply for relief from removal and to a hearing on their applications for relief. See INA § 240(b)(4)(B); 8 C.F.R. § 1240.10(a)(4); see also, e.g., Matter of M-A-M-, 25 I&N Dec. 474, 479 (BIA 2011) ("Included in the rights that the Due Process Clause requires in removal proceedings is the right to a full and fair hearing."). The regulations state that the Immigration Judge "shall inform the [noncitizen] of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the [noncitizen] an opportunity to make application during the hearing, in accordance with the provisions of § 1240.8(d)." 8 C.F.R. § 1240.11(a)(2) (emphases added). [For asylum and related relief: Respondent has a statutory right to seek asylum. INA § 208(a)(1) ("[A noncitizen] who is physically present in the United States or who arrives in the United States . . . irrespective of such [noncitizen's] status, may apply for asylum . . . ."). Granting

DHS's motion to dismiss where, as here, Respondent wishes to present his asylum claim would subvert Congress's clearly articulated intent. It would also violate his "right to a hearing on the merits of his claim." W-Y-U-, 27 I&N Dec. at 19; see 8 C.F.R. § 1240.11(c)(3) (directing that applications for asylum and withholding "will be decided by the immigration judge . . . after an evidentiary hearing to resolve factual issues in dispute" (emphasis added)). In adjudicating an opposed DHS motion to dismiss, as here, the Court must consider whether dismissal would prejudice the Respondent, including considering the Respondent's desire to have an application for relief adjudicated on the merits. Cf. Avetisyan, 25 I&N Dec. at 691 (recognizing that in considering whether to defer action on a case, an Immigration Judge considers "justice and fairness to the parties").

Once DHS has initiated removal proceedings by filing an NTA, it is the Court's "responsibility to . . . adjudicate the respondent's application for relief from removal, if any." Id.; see also Matter of J-A-B- & I-J-V-A-, 27 I&N Dec. 168, 170 (BIA 2017) (recognizing IJ's "duty to adjudicate the respondents' case once the removal proceedings were initiated."). The BIA has repeatedly recognized that "[t]he role of the Immigration Courts and the Board is to adjudicate whether [a noncitizen] is removable and 6 eligible for relief from removal in cases brought by the DHS." J-A-B- & I-J-V-A-, 27 I&N at 170 (quoting W-Y-U-, 27 I&N Dec. at 19); J-A-B- & I-J-V-A-, 27 I&N at 170 (noting that terminating proceedings upon unilateral motion may be "inconsistent with [the IJ's] role in our adjudicative process."). In Matter of W-Y-U-, where the respondent, who had filed an application for asylum with the court, opposed a DHS motion for administrative closure, the BIA recognized that in exercising their administrative closure authority an Immigration Judge must consider the respondent's "interest in having [the] case resolved on the merits." 27 I&N Dec. at 18-19. The BIA further acknowledged that a noncitizen in removal proceedings has a right to seek asylum and related relief and a "right to a hearing on

the merits of [their] claim." Id. at 19. The BIA concluded that these were persuasive reasons for the case to proceed and be resolved on the merits and reversed the Immigration Judge's grant of DHS's motion for administrative closure. Id. at 20.[2]

Similarly, here, the Court should deny DHS's motion given Respondent's interest in having the case resolved on the merits and his right to be heard on his asylum, withholding of removal and withholding based on the Torture Convention claim. See W-Y-U-, 27 I&N Dec. at 19; H.N. Ferreira, 28 I&N Dec. at 769-70 (reversing dismissal noting the respondent's "significant" interest in having her Form I-751 reviewed). Indeed, the facts of this case are similar to unpublished BIA decisions where the BIA has sustained respondents' appeal of a DHS motion to dismiss in light of respondents' desire to seek relief before the immigration court. See, e.g., Ex. A, G-C-D-, AXXX XXX 178 (BIA May 15, 2017) (unpublished) (sustaining appeal where respondents wished to have their applications for cancellation of removal and asylum adjudicated by the court); Ex. B, R-G-H-M-, AXXXXXX 972 (Aug. 9, 2017) (unpublished) (sustaining appeal where the respondents wished to seek cancellation of removal, noting that a respondent being a low DHS enforcement priority was no guarantee that she would remain so in the future and was not a sound basis for terminating her case and denying her the opportunity to have her cancellation claim adjudicated); Ex. C, AXXX XXX XXX (BIA Jan. 8, 2024) (unpublished) (sustaining appeal where the respondent wanted an adjudication on their pending asylum application, noting that DHS's reason for dismissal to preserve limited resources "is not a sufficient basis to terminate these proceedings over the objection of the respondent after DHS filed a Notice to Appear, and the respondent filed an application for relief from removal").

**2. Respondent Will Suffer Harm If Not Able to Pursue Asylum, Withholding of Removal and Withholding Based on the Torture Convention**

---

[2] Matter of W-Y-U- was partially superseded on other grounds via the 2024 EOIR Rule, Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46753 (May 29, 2024).

Respondent plans to apply for asylum, withholding of removal and withholding based on the Torture Convention and wishes to continue to pursue this relief. Forcing the Respondent to re-start their asylum process via Credible Fear would be an incredible waste of resources and severely harmful to the Respondent. First, he would have to remain detained until his credible fear interview was to be scheduled. Secondly, he will not have access to counsel or it will be severely curtailed if he remains in custody. In addition, fewer rights are afforded to individuals in the CFI process than in removal proceedings, which would prejudice the Respondent. See Matter of E-R-M- & L-R-M-, 25 I&N Dec. 520, 521 n.1 (BIA 2011) (noting that respondents in removal proceedings have "more rights available to them" than in expedited removal proceedings) compare, e.g., INA § 240(b)(4), 8 C.F.R. §§ 1240.3, 1240.10(a), 1003.1(b)(3) (rights in removal proceedings), with 8 C.F.R. §§ 1003.42(c), 1208.30(g)(2)(iv)(A) (limited rights in credible fear process.) As in Matter of W-Y-U-, here Respondent seeks a merits adjudication from this Court on his application for relief, which if granted would make him "eligible for lawful status in the United States," whereas dismissal provides him no legal status. Id. at 19; see also id. at 20 ("An unreasonable delay in the resolution of the proceedings may operate to the detriment of [noncitizens] by preventing them from obtaining relief that can provide lawful status. . . .").

Unlike in other cases where the BIA has considered DHS unilateral motions to dismiss, here the prejudice to the Respondent would be immediate and extreme. If the Court grants dismissal, DHS will subject him to expedited removal, likely resulting in his swift deportation from the United States with no ability to have his meritorious claim for relief heard in any forum. See, e.g., Matter of Andrade Jaso & Carbajal Ayala, 27 I&N at 559 (upholding IJ grant of DHS motion to dismiss noting that "[t]he respondents have not been ordered removed, . . . there is no

indication that they are in imminent danger of removal," and they could pursue relief in the future if DHS placed them into new removal proceedings).

**C. Even When Evaluated Solely on Its Stated Basis, DHS's Motion Must Be Denied.**

Even evaluating DHS's motion solely on its stated basis, if this Court conducts "an informed adjudication . . . based on an evaluation of the factors underlying [DHS's] motion," G-N-C-, 22 I&N Dec. at 284, that motions fails on its own terms and must be denied. See Matter of Andrade Jaso & Carbajal Ayala, 27 I&N Dec. at 559 (considering whether DHS's motion under 8 C.F.R. § 239.2(a)(7) complied with that provision's requirements). The regulation underlying DHS's motion allows DHS to seek dismissal where "[c]ircumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." 8 C.F.R. § 239.2(a)(7). This provision encompasses a case-specific component— "circumstances of the case"— and a government-specific component— "best interest of the government." Id. Here, DHS has failed to establish that circumstances in Respondent's case have changed since the NTA's issuance and has separately failed to demonstrate that continuation is no longer in the government's best interest. Further, DHS's sole reason for requesting dismissal is to pursue expedited removal against Respondent, which it cannot lawfully do as explained below.

**1. DHS Cannot Lawfully Pursue Expedited Removal Against Respondent**

DHS's sole reason for requesting dismissal is so that DHS can pursue expedited removal against Respondent. The Court should deny DHS's motion to dismiss because DHS's intended post-dismissal actions are unlawful for at least two reasons. First, subjecting Respondent to expedited removal would violate Congress's carefully crafted statutory scheme for processing noncitizen applicants for admission. INA § 235(b) 10 provides DHS with several choices for how to process a noncitizen whom it alleges is an inadmissible applicant for admission, but there

is no statutory authority for DHS to later reverse that choice. For certain allegedly inadmissible noncitizens, DHS can either place them into expedited removal under 8 U.S.C. § 1225(b)(1) or place them into full removal proceedings under 8 U.S.C. § 1225(b)(2). See Matter of E-R-M- & L-R-M-, 25 I&N Dec. at 523 (holding that "DHS has discretion to put [noncitizens] in section 240 removal proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act"); Matter of Cabrera-Fernandez, 28 I&N Dec. 747, 748 (BIA 2023). If DHS at the time of initial processing of the individual makes the choice to use its INA § 235(b)(2) authority by issuing the noncitizen an NTA, as DHS did in Respondent's case, DHS has no authority to later reverse that choice. Nor does DHS point to any such authority in their motion to dismiss. The Supreme Court's interpretation of INA § 235(b) in Jennings v. Rodriguez, 583 U.S. 281 (2018), also supports a reading of the statute that permits DHS to subject any given inadmissible applicant for admission to one process or the other, with no mechanism for later reversing course.

In Jennings, the Supreme Court differentiated between (b)(1) noncitizens and (b)(2) noncitizens. The Court observed that "applicants for admission fall into one of two categories, those covered by [INA §235](b)(1) and those covered by [INA § 235](b)(2). [INA § 235](b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by [INA § 235[(b)(1)." Id. at 287–88. Indeed, the statute itself states that INA § 235(b)(2) applies to applicants for admission "to whom paragraph [(b)](1)" does not apply.[3] Here, because DHS has elected to commence removal proceedings in Respondent's case, paragraph (b)(1) does not apply. Similarly, a number of provisions in the INA describe INA § 235(b)(2) noncitizens as those "to whom proceedings under [INA § 240] are . . . initiated at the

---

[3] INA § 235(b)(2)(B)(ii); accord Innovation L. Lab v. Wolf, 951 F.3d 1073, 1083 (9th Cir. 2020), vacated and remanded sub nom. Mayorkas v. Innovation L. Lab, 141 S. Ct. 2842 (2021), and vacated as moot sub nom. Innovation L. Lab v. Mayorkas, 5 F.4th 1099 (9th Cir. 2021).

time of such [noncitizen's] arrival."[4] This language makes clear that Congress understood that DHS's processing decision for a noncitizen applicant for admission—whether to proceed with (b)(1) or (b)(2)—would occur at the time of the noncitizen's arrival or initial apprehension, not at some other point months or years later.

In a 2003 decision, the U.S. District Court for the Eastern District of Michigan questioned DHS's authority to use expedited removal against noncitizens who had been paroled into the United States at some earlier point, concluding that the government had "not provided any authority to show that expedited removal applies to [noncitizens] who are 'arriving aliens' based solely on the entry fiction doctrine and who have been residing in the interior of the United States for some time." Am.-Arab Anti-Discrimination Comm. v. Ashcroft, 272 F. Supp. 2d 650, 667-68 (E.D. Mich. 2003). Second, subjecting Respondent to expedited removal would be unlawful because it would violate the long-held doctrine that new rules may not be applied retroactively in the absence of a clear congressional grant of retroactive rulemaking authority. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).

In this case, DHS purports to have the authority to subject Respondent to expedited removal pursuant to the January 24, 2025 Federal Register Notice expanding expedited removal to its full legislative scope. DHS, Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). While Congress granted DHS the authority to determine the scope of expedited

---

[4] 4 See, e.g., INA § 240B(a)(4) (referring to a noncitizen "who is arriving . . . and with respect to whom proceedings under section 1229a of this title are . . . initiated at the time of such alien's arrival" (emphasis added)); INA § 212(a)(9)(A)(i) (making inadmissible certain noncitizens "ordered removed under [INA § 235(b)(1)] or at the end of proceedings under [INA § 240] initiated upon the [noncitizen's] arrival"); INA § 241(b)(1)(A) ("[a noncitizen] who arrives at the United States and with respect to whom proceedings under [INA § 240] of this title were initiated at the time of such [noncitizen's] arrival"); INA § 241(c)(1) ("[A noncitizen] arriving at a port of entry of the United States who is ordered removed either without a hearing under [INA § 235(b)(1) or § 235(c)] or pursuant to proceedings under [INA § 240] initiated at the time of such [noncitizen's] arrival. . . .").

removal up to the statutory maximum, see INA § 235(b)(1)(A)(iii)(I), it did not grant DHS the authority to apply new expedited removal designations retroactively. The Supreme Court has long recognized that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." Bowen, 488 U.S. at 208. To do so would add "new legal consequences to events completed [prior to the expansion]." See Landgraf v. USI Film Prods., 511 U.S. 244, 269-70 (1994). Because Congress did not grant DHS the power to retroactively expand expedited removal, DHS cannot subject the Respondent, whose removal proceedings were initiated before the January 2025 expansion, to expedited removal; as described above, doing so would cause him significant prejudice.

### 2. DHS Has Failed to Show How Circumstances of This Case Have Changed Since the NTA's Issuance.

Further, dismissal is inappropriate because the "[c]ircumstances of the case" have not changed. 8 C.F.R. § 239.2(a)(7). DHS's motion does not even attempt to articulate how circumstances in this case have changed since the issuance of Respondent's NTA. In fact, DHS's motion references no facts specific to this case whatsoever. Contrary to DHS's conclusory statement that circumstances have changed, in fact no relevant circumstances have changed with respect to Respondent's case—he remains eligible for asylum, withholding of removal and withholding based on the Torture Convention and continues to desire an adjudication on his claim on the merits by this Court. See supra Section II. B. Respondent has been waiting for an adjudication of his asylum, withholding of removal and withholding based on the Torture Convention that only this Court has jurisdiction to grant, for over a year. Though DHS does not articulate the alleged changed circumstance in its motion, presumably DHS would argue that its new desire to pursue expedited removal against Respondent is a change in circumstances. But

even if DHS's immigration enforcement policy may have changed since the NTA was issued, a political change underlying the government's enforcement policy is insufficient to show a changed circumstance in "the case," meaning this specific case of Respondent Mr. Oliveira Gomes, considering his individualized circumstances and facts. See also Andrade Jaso & Carbajal Ayala, 27 I&N Dec. at 559 (concluding that the respondent's post NTA behavior constituted a change in circumstances for purposes of 8 C.F.R. § 239.2(a)(7)). In fact, when pushed for further explanation at the Respondent's hearing OPLA offered no further context or information. Because DHS has not shown that circumstances in this case have changed since the issuance of the NTA, the Court should deny DHS's motion to dismiss.

**3. DHS Has Failed to Show Why Continuation Is Not in the "Best Interest of the Government."**

Even if DHS had articulated changed circumstances in this case since the NTA's issuance, which it has not, DHS has failed to show why continuation is not in the "best interest of the government." 8 C.F.R. § 239.2(a)(7). DHS's motion fails to consider key factors necessary to determining the government's best interest in an individual case, including Respondent's individual circumstances, Respondent's position on dismissal, and the efficient use of limited government resources. Consideration of these factors compels the conclusion that this case should proceed to a merits determination, as Respondent desires.

**a. The Respondent's Individual Circumstances and Position on Dismissal**

Determining whether dismissal of any given case is in the government's best interest necessarily requires DHS to reach out to the respondent, as required by the ICPM, prior to filing for dismissal in order to understand the respondent's viewpoint and reasons why the respondent opposes dismissal. An individual's interest in having their claim for permanent immigration relief adjudicated on the merits must inform the government's view of whether dismissal is in the

government's best interest. Moreover, what is in the government's best interest necessarily includes knowing the respondent's current case circumstances and how a strategy one way or the other impacts lawful permanent residents and U.S. citizens in the respondent's life. Thus, OPLA's failure to seek Respondent's position before filing this motion itself defeats their assertion that dismissal is in the government's best interest, and therefore the motion must be denied.

### b. Efficient Use of Limited Government Resources

DHS has not established that dismissal of this case is in the government's best interest because it has failed to address a key factor, the efficient use of limited government resources. In this case, Respondent wishes to pursue relief before the Court, including relief that only the immigration court has authority to grant. Dismissing these proceedings over Respondent's objection would waste rather than conserve government resources. If this case is dismissed, Respondent will likely appeal the dismissal. DHS will then have to invest considerable resources in defending its decision to dismiss these proceedings. Likewise, the Department of Justice will expend considerable resources if this case is dismissed. The BIA will expend resources to issue a decision on appeal. The case may then be remanded to this Court, restoring Respondent to his current position before the Court, after the passage of time and expenditure of considerable government resources. In addition, his unlawful detention despite his compliance with immigration and criminal laws further extends the financial burden on the public. Particularly, if the Respondent appeals. If this case is dismissed and Respondent is placed in expedited removal, Respondent will pursue asylum through the Credible Fear process, requiring the use of more government resources to adjudicate the claim in another forum, which will ultimately result in the case returning to this Court for an asylum adjudication. This process would result in a much larger aggregate expenditure of resources than allowing Respondent's claim to proceed

now as he desires. In contrast, this Court's adjudication of Respondent's asylum, withholding of removal and withholding based on the Torture Convention promotes finality of the removal proceedings and prevents waste of government resources. If this case is allowed to move forward, the Court will schedule Respondent for an individual hearing which will use a limited amount of the Court's time and of OPLA's time.

Because DHS cannot establish either of the necessary requirements for bringing a motion to dismiss under 8 C.F.R. § 239.2(a)(7), this Court must deny the motion and allow Respondent's case to proceed to an adjudication on the merits.

### III. CONCLUSION

For all of the reasons stated above, this Court should deny DHS's motion to dismiss and allow Respondent to proceed to the merits of the application pending before the Court.

Respectfully submitted,

| | |
|---|---|
| June 9, 2025 | /s/ Melanie M Chaput |
| Date | Melanie Marie Chaput, Esq. |
| | Chaput Law Office |
| | 46 Bridge Street, Unit G |
| | Nashua, NH 03060 |
| | (603) 883-0085 |

**Cleberson OLIVEIRA GOMES**
**A# 226-040-357**

# PROOF OF SERVICE

    I hereby certify that a copy of the foregoing **RESPONDENT'S OPPOSITION TO DHS' MOTION TO DISMISS** was sent via electronic service on this day to the:

    Office of Principal Legal Advisor,
    150 Apollo Drive,
    Chelmsford, MA 01824.

| | |
|---|---|
| <u>June 9, 2025</u><br>Date | /s/ Melanie M Chaput<br>Melanie Marie Chaput, Esq.<br>Chaput Law Office<br>46 Bridge Street, Unit G<br>Nashua, NH 03060<br>(603) 883-0085 |