## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CLEBERSON OLIVEIRA GOMES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| PATRICIA H. HYDE, New England | ) |
| Field Office Director, U.S. Immigration | ) |
| and Customs Enforcement; MICHAEL | )    No. 1:25-cv-11571-JEK |
| KROL, Special Agent, Homeland Security | ) |
| Investigations, U.S. Immigration and | ) |
| Customs Enforcement; TODD M. LYONS, | ) |
| Acting Director, U.S. Immigration and | ) |
| Customs Enforcement; KRISTI NOEM | ) |
| U.S. Secretary of Homeland Security, | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM AND ORDER ON
## PETITION FOR A WRIT OF HABEAS CORPUS

**KOBICK, J.**

Petitioner Cleberson Oliveira Gomes, a citizen of Brazil, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking an order of immediate release from detention. In May 2024, Gomes was arrested and detained by U.S. Customs and Border Protection ("CBP") officers after crossing into the United States between ports of entry. CBP released Gomes on an Order of Recognizance and thereafter filed a Notice to Appear in the Chelmsford Immigration Court, thus commencing removal proceedings against him under 8 U.S.C. § 1229a. For over a year, Gomes abided by the conditions in the Order of Recognizance and resided in the United States.

On May 29, 2025, following a scheduled hearing in Immigration Court, U.S. Immigration and Customs Enforcement ("ICE") officers arrested Gomes pursuant to a warrant and ordered him detained under 8 U.S.C. § 1226. Section 1226(a) establishes a discretionary detention framework for noncitizens who are "arrested and detained" "[o]n a warrant issued by the Attorney General." Noncitizens detained under Section 1226(a) have the right to request a bond hearing before an Immigration Judge, at which the government bears the burden to prove that continued detention is justified. After Gomes requested a bond hearing, however, the government claimed for the first time that he is instead detained under 8 U.S.C. § 1225(b)(2) and ineligible for bond. In contrast with Section 1226(a)'s discretionary detention scheme, Section 1225(b)(2) mandates detention if an immigration officer determines that a noncitizen seeking admission to the United States is not clearly and beyond a doubt entitled to be admitted. Agreeing that Gomes is detained under Section 1225(b)(2), the Immigration Judge deemed him ineligible for bond.

Gomes' petition for a writ of habeas corpus contends that he is not lawfully detained under Section 1225(b). He requests that the Court order his immediate release from detention or, in the alternative, hold a bond hearing. The government responds that although Gomes is in removal proceedings and was arrested on a warrant citing Section 1226, Gomes is, and has always been, subject to mandatory detention under Section 1225(b)(2). Should the Court conclude that Gomes is detained under Section 1226 rather than Section 1225(b)(2), however, the government contends that the Immigration Court should determine in the first instance whether he should be released on bond.

Gomes' statutory construction better aligns with the text of Sections 1225(b) and 1226 and better harmonizes the two statutes. The government's interpretation contravenes the plain text of Section 1226(a) and would render superfluous Section 1226(c), which mandates the detention of

certain noncitizens and is the sole exception to Section 1226(a)'s discretionary framework. Because Gomes was arrested on a warrant and ordered detained under Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework. Gomes' petition will accordingly be granted, and the government respondents will be ordered to provide him with a bond hearing before an Immigration Judge. At that hearing, the government will bear the burden of demonstrating that Gomes poses a danger to the community or a flight risk.

## BACKGROUND

### I.    Statutory and Regulatory Framework.

Two statutes principally govern the detention of noncitizens[1] pending removal proceedings: 8 U.S.C. §§ 1225 and 1226.[2] Section 1225 applies to "applicants for admission," who are, as relevant here, noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1).[3] All applicants for admission must be inspected by an immigration officer. *Id.* § 1225(a)(3). Certain applicants for admission are then subject to expedited removal proceedings. *See* 8 U.S.C. § 1225(b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). In other cases, if the examining immigration officer determines that an applicant for admission is not "clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) provides that the applicant for admission "shall be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018).[4] A noncitizen

---

[1] The terms "noncitizen" and "alien" are used interchangeably throughout this Order.

[2] Another statute, 8 U.S.C. § 1231, governs the detention of noncitizens who have been ordered removed.

[3] In the immigration context, the term "admission" means "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

[4] Standard removal proceedings are governed by 8 U.S.C. § 1229a, and they involve "an evidentiary hearing before an immigration judge" at which the noncitizen "may attempt to show

detained under Section 1225(b)(2) may be released only if he is paroled "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 300 ("That express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released.").

Whereas Section 1225(b) "authorizes the Government to detain certain aliens *seeking admission into the country*," Section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 289 (emphases added). Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." For such individuals, the Attorney General (1) "may continue to detain the arrested alien," (2) "may release the alien on . . . bond of at least $1,500," or (3) "may release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination, but noncitizens have the right to request a custody redetermination (i.e., bond) hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

In addition to bond, the government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole. *See* 8 U.S.C. § 1226(a)(2)(B); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance pursuant to DHS' conditional parole

---

that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108. These proceedings commence when a charging document, called a Notice to Appear, is filed in Immigration Court. 8 C.F.R. § 1003.14(a); *see* 8 U.S.C. § 1229a.

authority under . . . 8 U.S.C. § 1226(a)(2)(B)[.]"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *Cruz-Miguel v. Holder*, 650 F.3d 189, 191 (2d Cir. 2011) (similar).[5]

Section 1226(c) is the sole exception to Section 1226(a)'s discretionary detention framework. *See* 8 U.S.C. § 1226(a) ("Except as provided in subsection (c) . . . the Attorney General . . . may"); *id.* § 1226(c)(1) ("The Attorney General *shall* take into custody any alien who . . ." (emphasis added)). Until recently, Section 1226(c) required the detention of noncitizens who are inadmissible or deportable because they have committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities. *See id.* §§ 1226(c)(1)(A)-(D). Through the Laken Riley Act, enacted in January 2025, Congress expanded Section 1226(c)'s mandatory detention requirement to a new category of noncitizens, but only where two criteria are met. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). Under Section 1126(c)(1)(E), the Attorney General must also detain a noncitizen if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), obtained documents or admission through misrepresentation or fraud, *id.* § 1182(a)(6)(C), or lacks valid documentation, *id.* § 1182(a)(7); and (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement

---

[5] The sample Order of Recognizance posted on ICE's website indicates that it is issued in accordance with 8 U.S.C. § 1226. *See* U.S. Dep't of Homeland Security, U.S. Immigration and Customs Enforcement, *Order of Release on Recognizance*, https://www.ice.gov/doclib/detention/checkin/I_220A_OREC.pdf.

officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. §§ 1226(c)(1)(E)(i)-(ii).

## II.    <u>Factual Background.</u>

Gomes is a native and citizen of Brazil. ECF 1, ¶ 1; ECF 8, ¶ 7. On May 12, 2024, he entered the United States and encountered CBP officers near the southern border, in the area of Calexico, California. ECF 1, ¶ 1; ECF 8, ¶ 8. The officers arrested Gomes without a warrant and detained him because he did not possess a valid immigrant visa or other valid entry document. ECF 8, ¶¶ 8-9; *see* ECF 1, ¶ 1. Later that day, CBP issued Gomes a Notice to Appear that charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)[6] and released him on an Order of Recognizance. ECF 8, ¶ 9.[7] On May 13, 2024, ICE filed the Notice to Appear in the Chelmsford Immigration Court, thus commencing standard removal proceedings against him under 8 U.S.C. § 1229a. ECF 8, ¶ 10; ECF 14 (Notice to Appear).

Approximately one year later, on May 29, 2025, Gomes appeared in the Chelmsford Immigration Court for a removal hearing. ECF 1, ¶ 3; ECF 8, ¶ 11. At the hearing, counsel for ICE made an oral motion to terminate the proceedings for purposes of placing Gomes in expedited removal proceedings. ECF 1, ¶ 4; ECF 8, ¶ 11; ECF 13-4. The Immigration Judge declined to rule

---

[6] Section 1182(a)(6)(A)(i) reads in full: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[7] The government contended at the hearing that it should not have released Gomes on an Order of Recognizance because he had been arrested without a warrant and was therefore subject to mandatory detention under Section 1225(b)(2). CBP's decision to conditionally parole Gomes under Section 1226(a) appears to have nevertheless been consistent with its longstanding practice of conditionally paroling noncitizens arrested without a warrant near the border. *See* Transcript of Oral Argument, at 44:24-45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954) (Solicitor General representing that "DHS's long-standing interpretation has been that 1226(a) applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended.").

on the oral motion at the hearing. *See* ECF 1, ¶ 6. She instead gave Gomes ten days to respond to the motion and set a new hearing for December 4, 2025. *Id.*; *see* ECF 8, ¶ 11; ECF 13-4.

Also on May 29, 2025, ICE obtained a warrant for Gomes' arrest, which stated that it was issued under 8 U.S.C. §§ 1226 and 1357. ECF 8, ¶ 12; ECF 13-3 (warrant). ICE officers arrested Gomes pursuant to that warrant as soon as he exited the Chelmsford Immigration Court. ECF 1, ¶ 7; ECF 8, ¶ 12; ECF 13-5, at 5. Later that day, ICE issued a Notice of Custody Determination, which stated that Gomes was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act"—i.e., pursuant to 8 U.S.C. § 1226. ECF 13-2.[8]

Gomes is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts. ECF 8, ¶ 13. He requested a bond hearing before an Immigration Judge, which was held on June 12, 2025. *See* ECF 13-1; ECF 13-5, at 1; 8 C.F.R. § 1236.1(d)(1). The government did not seek to justify Gomes' detention at the hearing by arguing that he posed a danger to the community or a flight risk. *See Hernandez-Lara*, 10 F.4th at 41. Citing a recent decision issued by the Board of Immigration Appeals ("BIA"), the government instead argued that Gomes is categorically ineligible for bond because he is detained under Section 1225(b)(2) rather than Section 1226(a). *See* ECF 13-5, at 2 (citing *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025)). In *Matter of Q. Li*, the BIA held that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States . . . and subsequently placed in removal proceedings is detained under . . . 8 U.S.C. 1225(b), and is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a)." 29 I. & N. Dec. at 69. The Immigration Judge denied Gomes' request for

---

[8] In his declaration, ICE Assistant Field Office Director Keith M. Chan asserts that "[o]n May 29, 2025, ICE detained [Gomes] pursuant to its authority [under] 8 U.S.C. § 1225(b)." ECF 8, ¶ 12. The Court does not credit this assertion. The assertion is in the nature of a legal conclusion, not a fact, and in any event is contradicted by the Notice of Custody Determination completed by the ICE officer who ordered Gomes detained. *See* ECF 13-2.

bond later that day, stating only that "[p]er *Matter of Q. Li*, [Gomes is] not eligible for bond." ECF 13-1 (italics added). Gomes' removal proceedings remain pending in the Chelmsford Immigration Court. ECF 8, ¶ 14.

On May 30, 2025, before he had been denied bond by the Immigration Judge, Gomes filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in this Court. ECF 1. The petition alleges that his detention violates the Due Process Clause of the Fifth Amendment and federal immigration statutes. *See id.* ¶¶ 19-24. Gomes names as defendants the following individuals in their official capacities: Patricia Hyde, the New England Field Office Director for ICE; Michael Krol, the New England Special Agent in Charge for Homeland Security Investigations for ICE; Todd Lyons, the Acting Director for ICE; and Kristi Noem, the U.S. Secretary of Homeland Security. *Id.* ¶¶ 13-18. After receiving the government's response to the petition, ECF 7, and Gomes' reply, ECF 13, the Court held a hearing and took the petition under advisement, ECF 16. At the Court's invitation, the parties submitted supplemental briefs after the hearing. ECF 17, 18.

## DISCUSSION

### I.    Exhaustion of Administrative Remedies.

This Court has jurisdiction to review habeas petitions filed by immigration detainees who assert that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The government does not contest this Court's jurisdiction, but it contends that Gomes' challenge to his detention is premature because he has not yet exhausted his administrative remedies by appealing the Immigration Judge's denial of his request for release on bond to the BIA.

"There are two species of exhaustion: statutory and common-law." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). "The former deprives a federal court of jurisdiction, while the latter

'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" *Id.* (quoting *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). Because exhaustion is not required by statute in this context, the government's exhaustion argument is measured against the "more permissive" common-law exhaustion standard. *Id.* at 256; *see Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) ("[C]ourts have more latitude in dealing with exhaustion questions when Congress has remained silent.").

While "the exhaustion doctrine ordinarily 'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency,' and, thus, should customarily be enforced," there are "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145, 146 (1992)). As relevant here, "a court may consider relaxing the [exhaustion requirement] when unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action." *Id.* "And, relatedly, if the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking schedule is otherwise reasonable and definite.'" *Id.* (quoting *McCarthy*, 503 U.S. at 147). Irreparable harm may be established where a petitioner will be incarcerated or detained pending the exhaustion of administrative remedies. *See Brito*, 22 F.4th at 256 ("'[E]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or the ongoing deprivation of some other liberty interest.'" (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986))).

Waiver of the exhaustion requirement is warranted here because Gomes is likely to experience irreparable harm if he is unable to seek habeas relief until the BIA decides an appeal

of his request for release on bond. According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024. *See Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 1193850, at *5 (W.D. Wash. Apr. 24, 2025). The Immigration Judge denied Gomes' request for release on bond on June 12, 2025. *See* ECF 13-1. Assuming the BIA is processing appeals at the same rate as last year, Gomes' appeal would likely not be resolved until 2026, giving rise to the possibility that he would endure several additional months of detention that may be unlawful. Such a prolonged loss of liberty would, in these circumstances, constitute irreparable harm. *See Bois*, 801 F.2d at 468.

Many of the policy concerns animating the common-law exhaustion requirement are, moreover, absent here. An Immigration Judge has already considered and denied Gomes' bond request. *Cf. Brito*, 22 F.4th at 255-56 (requiring exhaustion where, among other things, the petitioners failed "to raise their alternatives-to-detention claims before their respective [immigration judges]"). That denial was based on a legal conclusion regarding the interaction between Section 1225(b)(2) and Section 1226, not on any factual determinations particular to Gomes' case. And, in any event, the underlying factual record is straightforward and undisputed. *Cf. McCarthy*, 503 U.S. at 145 (exhaustion requirement promotes judicial efficiency by creating "a useful record for subsequent judicial consideration, especially in a complex or technical factual context"). In these circumstances, where Gomes' liberty interests "'weigh heavily against requiring administrative exhaustion,'" waiver of exhaustion is warranted. *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy*, 503 U.S. at 146); *see also, e.g.*, *Villalta v. Sessions*, No. 17-cv-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) ("[T]he potential for irreparable harm to Petitioner, in the form of continued unlawful denial of bond hearings for potentially four months or more, persuades the Court that waiver of the exhaustion requirement is appropriate in

10

the instant case." (quotation marks and brackets omitted)); *Rodriguez*, 2025 WL 1193850, at *10 (similar) (collecting cases).

## II.    <u>Lawfulness of Detention.</u>

The central question posed by Gomes' habeas petition is whether he is lawfully detained under Section 1225(b)(2), as the government now contends, or is instead subject to discretionary detention under Section 1226(a), as the government represented in its Notice of Custody Determination. Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," *Jennings*, 583 U.S. at 289, and it applies when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a). That is precisely what occurred here. In May 2024, CBP conditionally paroled Gomes into the United States on an Order of Recognizance issued under Section 1226(a). *See* ECF 8, ¶ 9; *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. at 747. Gomes then resided in the country for over a year until, on May 29, 2025, he was arrested on a warrant issued pursuant to Section 1226. *See* ECF 8, ¶ 12; ECF 13-3. Following that arrest, Gomes was ordered detained, again pursuant to Section 1226. *See* ECF 13-2. Gomes thus argues that because he was arrested and detained pursuant to Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework, and he should have received a full bond hearing.

The government disagrees, contending that Gomes' current detention is governed by Section 1225(b)(2). Section 1225(b)(2) "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings*, 583 U.S. at 289. If an immigration officer "determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," Section 1225(b)(2) requires that the noncitizen be detained for removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). When he was inspected by a CBP officer in May

2024, Gomes failed to clearly and beyond a doubt demonstrate that he was entitled to be admitted. *See* ECF 8, ¶¶ 8-9. It is therefore undisputed that Gomes was, at that time, an applicant for admission subject to mandatory detention under Section 1225(b)(2). But instead of keeping Gomes detained after that encounter, CBP conditionally paroled him into the United States on an Order of Recognizance pursuant to its authority under Section 1226(a). *See id.* ¶ 9. And when Gomes was arrested by ICE in May 2025, it was on the authority of a warrant issued under Section 1226 rather than Section 1225(b)(2). *See* ECF 13-3. Thus, the question is whether Section 1225(b)(2) continues to mandate the detention of a noncitizen, like Gomes, who has been conditionally paroled into the United States pursuant to Section 1226, is in the midst of standard removal proceedings, and is otherwise subject to Section 1226(a)'s discretionary detention framework.

Cardinal principles of statutory interpretation guide the Court's analysis. "A court's lodestar in interpreting a statute is to effectuate congressional intent," and "the quest to determine this intent must start with the text of the statute itself." *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020). Canons of interpretation may aid in this analysis, including the principle that statutes should be construed so that "'no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001)). The Court may also look to the structure of the statutory scheme, the context surrounding the statutory provision, any relevant legislative history, and Congress's purpose in enacting the statute. *See, e.g.*, *Gundy v. United States*, 588 U.S. 128, 140-41 (2019); *Barr*, 954 F.3d at 31.

The Court begins with the text of Section 1226(a). Following a noncitizen's arrest and detention "[o]n a warrant," and pending the completion of removal proceedings, Section 1226(a) provides that the Attorney General: (1) "*may* continue to detain the arrested alien"; (2) "*may*

release the alien on . . . bond"; or (3) "*may* release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1), (a)(2)(A), (a)(2)(B) (emphases added). The thrice-used permissive word "may" indicates Congress's intent to establish a discretionary, rather than mandatory, detention framework for noncitizens arrested on a warrant. *See Jennings*, 583 U.S. at 300 ("'the word "may" . . . implies discretion,'" whereas "'the word "shall" usually connotes a requirement'" (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016))). And while Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* . . ., the Attorney General . . . *may*" (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like Gomes, who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. Scalia & B. Garner, Reading Law 107 (2012)). Interpreting Section 1225(b)(2) to mandate Gomes' detention in these circumstances would contravene Congress's intent that Section 1226(a)'s discretionary detention framework apply to all noncitizens arrested on a warrant except those subject to Section 1226(c)'s carve-out. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

The government's interpretation of Section 1225(b)(2) would also render a recent amendment to Section 1226 superfluous. Section 1226(c)(1)(E)—added to Section 1226 in 2025 by the Laken Riley Act—makes a noncitizen subject to mandatory detention if he (i) is inadmissible under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7) (the "inadmissibility criterion"); "*and*" (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the

"criminal conduct criterion"). 8 U.S.C. § 1226(c)(1)(E) (emphasis added). By using the conjunction "and," the provision mandates detention only where the inadmissibility criterion and the criminal conduct criterion are both satisfied. Thus, when a noncitizen is arrested on a warrant, his inadmissibility on one of the three grounds specified in Section 1226(c)(1)(E)(i) is not by itself sufficient to except him from Section 1226(a)'s discretionary detention framework. Only where the criminal conduct criterion is also satisfied has Congress determined that such a noncitizen must be subject to mandatory detention. *See Zadvydas v. Davis*, 533 U.S. 678, 696 (2001) ("[I]f 'Congress has made its intent' in the statute 'clear, we must give effect to that intent.'" (quoting *Miller v. French*, 530 U.S. 327, 336 (2000))).

Interpreting Section 1225(b)(2) to apply to noncitizens who are arrested on a warrant while residing in the United States, as the government does, would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous for noncitizens who are inadmissible on two of the three grounds specified in the inadmissibility criterion. *See* 8 U.S.C. § 1226(c)(1)(E)(i) (covering noncitizens who are inadmissible under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7)). After all, a noncitizen who is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), or who lacks requisite documentation, *id.* § 1182(a)(7), is unlikely to prove to an examining immigration officer that he "is clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1125(b)(2)(A). Such is the case with Gomes: he has been charged with inadmissibility under Section 1182(a)(6)(A), ECF 14, and the record shows that he could have been charged with inadmissibility under Section 1182(a)(7), ECF 8, ¶ 8. If Section 1225(b)(2) applied to noncitizens who are arrested on a warrant while residing in the United States, it would render Section 1126(c)(1)(E)'s criminal conduct criterion superfluous whenever the noncitizen is inadmissible under Sections 1182(a)(6)(A) or (a)(7). Such an interpretation, which would largely nullify a

statute Congress enacted this very year, must be rejected. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *Bilski v. Kappos*, 561 U.S. 593, 608 (2010) ("[The canon against surplusage], of course, applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times."). The Court therefore concludes that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States. Because Gomes was arrested on such a warrant and detained pursuant to Section 1226, he is subject to Section 1226(a)'s discretionary detention framework and, accordingly, is eligible for bond. *See* 8 U.S.C. § 1226(a)(2)(A).

The government resists this conclusion, arguing that it is contrary to the BIA's recent decision in *Matter of Q. Li*, 29 I. & N. Dec. 66. But that case is factually distinct, and its reasoning does not alter the Court's analysis. The respondent in *Matter of Q. Li* was a noncitizen who was arrested without a warrant and detained under Section 1225(b) shortly after crossing into the United States without being inspected and admitted. *Id.* at 67. The Department of Homeland Security ("DHS") paroled her into the country under 8 U.S.C. § 1182(d)(5)(A) on the condition that she be required to regularly report to a DHS field office. *Id.* While the respondent was on parole, however, DHS learned that she was "wanted in Spain for travel document forgery and human smuggling crimes." *Id.* When the respondent showed up for her next scheduled appointment, DHS took her into custody and issued her a Notice to Appear, which automatically terminated her parole under 8 U.S.C. § 1182(d)(5)(A). *See id.* at 67, 70. The respondent sought

bond under Section 1226(a), but an Immigration Judge denied her request, concluding that she was detained under Section 1225(b)(2) and was therefore ineligible for bond. *See id.* at 67. The BIA affirmed, holding that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States . . . and subsequently placed in removal proceedings is detained under . . . 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under . . . 8 U.S.C. § 1226(a)." *Id.* at 69.

The BIA's reasoning in *Matter of Q. Li* is inapposite here because Section 1226(a) applies only where a noncitizen is arrested "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). There is no indication that the respondent in *Matter of Q. Li* was arrested on such a warrant. To the contrary, the BIA explained that her parole "was automatically terminated when she was served with a notice to appear," causing her to "return . . . to the custody' under [Section 1225(b)] 'from which [she] was paroled.'" *Id.* at 70 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. § 212.5(e)(2) ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified."). Thus, the respondent lacked any apparent basis to argue that her detention was governed by Section 1226(a), and, because her grant of humanitarian parole under Section 1182(d)(5)(A) had been terminated, DHS was required by Section 1225(b)(2) to continue detaining her.

The circumstances here are entirely different. After being arrested in May 2024, Gomes was immediately issued a Notice to Appear and then conditionally paroled on an Order of Recognizance issued under Section 1226(a). *See* ECF 8, ¶ 9; *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. at 747. Over a year later, he was taken into custody because he was arrested on a warrant issued under Section 1226, not because humanitarian parole under Section 1182(d)(5)(A) automatically terminated. *See* ECF 13-3. *Matter of Q. Li* consequently does not conflict with this

Court's conclusion that Gomes is subject to discretionary detention under Section 1226(a) rather than mandatory detention under Section 1225(b)(2).[9]

Gomes' habeas petition will, accordingly, be granted. Gomes is not detained under Section 1225(b)(2), but rather under Section 1226. And under Section 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge at which the government must prove by clear and convincing evidence that he poses a danger to the community, or prove by a preponderance of the evidence that he is a flight risk, if it seeks to continue detaining him. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1); *Hernandez-Lara*, 10 F.4th at 41. The government was not held to those burdens because the Immigration Judge erroneously concluded that Gomes is detained under Section 1225(b)(2) and therefore ineligible for bond. ECF 13-1. Unless and until the government meets its burden, Gomes' continued detention is unlawful.

---

[9] The BIA opined, in a footnote, that "[o]nce an alien is detained under [Section 1225(b)], DHS cannot convert the statutory authority governing her detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc *issuance* of a warrant." *Matter of Q. Li*, 29 I. & N. Dec. at 69 n.4 (emphasis added). This statement, which was not material to the BIA's holding, does not alter the Court's analysis. It does not address the core issue in this case, because Section 1226(a)'s discretionary detention scheme is not triggered by the "issuance of a warrant." *Id.* It applies only where a noncitizen has been "arrested and detained" "[o]n a warrant." 8 U.S.C. § 1226(a). The BIA's footnote is best read to address only the situation where a noncitizen is arrested without a warrant pursuant to Section 1225(b) and remains continually detained.

Nevertheless, to the extent the footnote could be read to suggest that the BIA would conclude that Gomes is subject to mandatory detention under Section 1225(b)(2), this Court respectfully disagrees with that conclusion. "[C]ourts must exercise independent judgment in determining the meaning of statutory provisions," and they "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024). For the reasons given in this opinion, the Court concludes that noncitizens arrested and detained on a warrant issued under Section 1226 while residing in the United States are subject to Section 1226(a)'s discretionary detention scheme rather than Section 1225(b)(2)'s mandatory detention provision.

**III.** __Remedy.__

Gomes seeks an order for his immediate release or, in the alternative, a bond hearing before this Court. Neither of those remedies is warranted at this juncture. Gomes first contends that the Court should order his release "because the only basis proffered by the [government] for his detention, § 1225(b)(2), does not apply to him." ECF 17, at 2. This contention misses the mark because, as discussed, Gomes remains subject to Section 1226(a)'s discretionary detention scheme.[10] Gomes next argues that this Court, rather the Immigration Court, should hold a bond hearing. *See id.* at 3. He has not, however, cited any relevant authority in support of this request. And because the Immigration Court originally concluded that Gomes was categorically ineligible for bond, it has not yet had the opportunity to consider the merits of Gomes' request for release on bond under Section 1226(a). *See* ECF 13-1. Nor has the government yet attempted to carry its burden to demonstrate that Gomes' continued detention is warranted. *See Hernandez-Lara*, 10 F.4th at 41. These considerations counsel in favor of permitting the Immigration Court to pass on the merits of Gomes' request for bond in the first instance.

The Court accordingly agrees with the government that the appropriate remedy is to order the Immigration Court to conduct a new hearing at which it considers Gomes' eligibility for bond under Section 1226(a). *See* ECF 18, at 2. The First Circuit routinely orders this remedy in cases where it has concluded that a noncitizen detained under Section 1226(a) was denied bond because the Immigration Court failed to apply the correct legal standards. *See, e.g.*, *Hernandez-Lara*, 10

---

[10] The sole case Gomes cites in support of this request is inapposite. In *Martinez v. Hyde*, another session of this Court ordered the petitioner's immediate release because the government was unable to produce an expedited order of removal "or any other document substantiating the legality of Petitioner's detention." ECF 22, at 4, No. 25-cv-11613-BEM (D. Mass. June 17, 2025). Because Gomes was arrested on a warrant, Section 1226(a) provides a lawful basis for his detention at present.

F.4th at 46 (permitting the government to hold a new bond hearing and stipulating the burden of proof to be applied at that hearing); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021) (same); *Brito*, 22 F.4th at 256-57 (similar). The Court will therefore remand this case to the Immigration Court with instructions to consider Gomes' eligibility for bond under Section 1226(a).

**CONCLUSION AND ORDER**

For the foregoing reasons, Gomes' petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF 1, is GRANTED. The respondents are ORDERED to provide Gomes with a bond hearing under 8 U.S.C. § 1226(a) within 10 days of this Order. The respondents are ENJOINED from denying bond to Gomes on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2). The respondents are further ORDERED to file a status report on or before July 21, 2025, stating whether Gomes has been granted bond, and, if his request for bond was denied, the reasons for that denial.

SO ORDERED.

/s/ Julia E. Kobick_____
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: July 7, 2025